**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------
ANNA MARIE GARCIA FOR           :
ANTHONY MARRERO,                :
                                :
            Plaintiff,          :    Civ. No. 04-4840 (DRD)
       v.                       :
                                :
COMMISSIONER OF SOCIAL          :    **O P I N I O N**
SECURITY,                       :
                                :
            Defendant.          :
---------------------------------

Abraham S. Alter, Esq.
Langton & Alter
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065
    Attorney for Plaintiff


Christopher J. Christie, Esq.
United States Attorney
By:  Sandra M. Grossfeld, Esq.
     Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278-0004
    Attorney for Defendant


**DEBEVOISE, Senior District Judge**

Plaintiff, Anna Marie Garcia ("Plaintiff"), appearing on behalf of her son, Anthony Marrero ("Claimant"), appeals from a final determination of the Commissioner of Social Security ("Commissioner") denying her son's application for Supplemental Security Income ("SSI") benefits. Plaintiff alleges that the

1

Commissioner's determination is not supported by substantial evidence and that, on the contrary, substantial evidence exists in the record to support a finding of disability pursuant to 42 U.S.C. §§ 405(g) and 1382.  (Pl.s' Br. at 4).  Plaintiff further contends that the Administrative Law Judge ("ALJ") failed to evaluate all relevant evidence and provide reasons for the basis of his decision.  (Pl.s' Br. at 9).

I.     **PROCEDURAL HISTORY**

On December 17, 2001, Plaintiff filed an application for SSI benefits alleging disability as of November 16, 2001 (R. at 81).[1] Plaintiff's application was denied initially and again upon reconsideration.  (R. at 57-59, 63-64).  Thereafter, Plaintiff requested a hearing before an administrative law judge to review the application (R. at 65-68), and such hearing was held before Administrative Law Judge John M. Farley (the "ALJ") on August 21, 2003.  (R. at 26).  On October 30, 2003, the ALJ denied Plaintiff's application because he found that her son did not suffer from a disability.  (R. at 11-19).  Plaintiff then filed a request, on December 19, 2003, for review of the ALJ decision by the Appeals Council.  (R. at 9).  On July 30, 2004, the Appeals Council denied the request for review.  (R. at 4).

On October 1, 2004, Plaintiff filed a complaint seeking

---

[1]"R." citations are to the correspondingly numbered pages in the certified administrative record filed with the Court as part of the Commissioner's answer.

review of the Appeals Council's denial.

**II.   FACTUAL BACKGROUND**

A.   Plaintiff's Testimony Regarding Claimant's Background

Claimant is a child who, at the time of the hearing, was nine years old and about to enter the fourth grade. (R. at 29-30). Plaintiff alleges that Claimant is disabled because he suffers from attention deficit hyperactivity disorder ("ADHD"), learning disabilities, and behavioral problems. (R. at 35).

According to Plaintiff's testimony, Claimant has lived with her for his entire life. (R. at 29). At the time of the hearings, Claimant was entering the fourth grade and attended mainstream classes in the Elizabeth school system. (R. at 30). Although he qualified for special education classes, Plaintiff was told there was no room for him in those classes. (R. at 30). Instead, he received extra help in certain subjects through resource classes in which he met with a teacher on a one-to-one basis. (R. at 31).

In first grade, according to Plaintiff, Claimant was unable to learn how to read and was very disruptive in school. (R. at 34). Plaintiff further states that Claimant had behavioral problems at home and soiled himself frequently. (R. at 34). Accordingly, Claimant was held back (at the school's recommendation and with Plaintiff's consent) and repeated the first grade. (R. at 33). On the second attempt in first grade,

3

Plaintiff contends that claimant made no progress academically so she took him to a hospital where he was diagnosed with ADHD and with learning disabilities in reading and language arts.  (R. at 35).

Thereafter, Claimant advanced to second and third grade on schedule but was progressing slowly and still exhibited behavioral problems.  (R. at 36).  Plaintiff claims that he behaved well in the resource classes where he received individualized attention but that his behavior in the mainstream classes and during recess was getting worse.  (R. at 40-41). Plaintiff notes that Claimant often wants to play with toys that are intended for younger children (with which he is not allowed to play) and on three occasions, Claimant "had a [sic] actual fight and disrespect [sic] and cursed at the [school] aides since he actually wanted to jump rope or the hula hoop to play with [sic]."  (R. at 41).  She further states that his behavior at home is very poor: that he won't do his homework, won't bathe unless she forces him and won't eat unless she prepares him food. (R. at 42).

In November of 2002, Claimant's pediatrician put him on medication to control his behavior and help him focus in school. (R. at 43).  Plaintiff contends that the medication has done little to help Claimant and that he has experienced side effects such as "chest pain, depression, [and] . . . overwhelmingness or

4

sadness." (R. at 44).  Since Claimant started taking the medication, Plaintiff has nonetheless received complaints from Claimant's teachers about his behavior and he was suspended once for "[d]isrespecting the aides at lunchtime and recess."  (R. at 45).

B.   Medical Evidence

   *1.   Child Study Team Evaluation, 11/16/01*

   On November 16, 2001, Claimant was examined by a team of doctors at Children's Specialized Hospital.  (R. at 169).  The doctors tested Claimant in several areas and determined the following: Claimant's intellectual functioning is average, with an overall IQ of 104.  (R. at 169).  He exhibited difficulty remaining on task and required frequent re-direction.  (R. at 169).  Claimant's scores on Freedom from Distractibility and his overall score on the "GDS vigilance tasks, do not show a significant problem with attention and concentration but his behavior during the evaluation along with reports from his mother and teachers suggest significant difficulty with attention, concentration, and overactivity/restlessness.  (R. at 170).  The team findings further note that it is not uncommon for a child to be capable of concentrating on the above tests but have significant problems concentrating in a classroom.  (R. at 170).  As the evaluation states, "[t]he testing situation

is unique in that it is individualized and distractions are minimized.  In such a setting, children with attention/concentration difficulties often perform well.  In contrast, those same children struggle in classrooms in which there is less individualized attention and distractions are consistently present."  (R. at 170).  The doctors noted that Claimant's overall emotional/behavioral assessment suggests the presence of attention and concentration difficulties.  (R. at 170).

Noting Claimant's difficulties in reading and writing, the doctors state that Claimant should be classified for special education services.  (R. at 170).  The doctors recommend he receive a very structured, multisensory approach to learning and suggest resource room assistance.  (R. at 170).  The evaluation then lists 23 specific suggestions advising teachers how to treat students with attention/concentration problems.  (R. at 171-73).

2.     *Medical evaluation by Dr. Gutierrez, 3/30/02*

Claimant was referred to Dr. Gutierrez by the Division of Disability Determinations for a psychiatric evaluation.  (R. at 197).  Dr. Gutierrez examined Claimant on March 30, 2002 and observed no evidence of hyperactivity.  (R. at 198).  He noted that Claimant was cooperative and verbal and that his speech was clear and coherent.  (R. at 198).

Furthermore, Dr. Gutierrez found Claimant capable of following instructions and able to follow the topic of conversation. He observed no evidence of thought disorder. (R. at 199). However, Dr. Gutierrez stated that although he observed no evidence of hyperactivity, Claimant "may be hyperactive in a group situation." He diagnosed Claimant with "[a]ttention deficit hyperactive disorder, combined type, mild." (R. at 199).

2.  *Medical evaluation by Dr. Wang, 5/12/03*

Dr. Wang examined Claimant on May 12, 2003. (R. at 278). She noted that claimant was cooperative and friendly and that he was initially calm but later began to fidget and touch his mother's hair quite frequently. (R. at 280). She described him as being alert, with a good memory and average intelligence. (R. at 280). Dr. Wang found that Claimant was "responding beautifully" with the medication he had been taking and prescribed an additional dose to be given at 4 pm (in addition to the dose he takes in the morning). (R. at 281). She diagnosed Claimant as having "ADHD, combined type," "Oppositional defiant disorder," and "Learning disorder." (R. at 280).

3.  *Medical evaluations by Dr. Wang, 6/18/03 and 7/16/03*

Dr. Wang examined Claimant again on June 18 and July 16 of 2003 and found on both occasions that he was happy and

that his thought processes were normal. (R. at 283-84). She further noted that there were no adverse effects from the medication. (R. at 283-84).

4.  *Medical evaluations by Dr. Wang, 8/25/03*

At the hearing in this case, Plaintiff testified that Claimant's medication was causing chest pains and making him depressed. (R. at 48, 53, 289). Thus, to determine whether Claimant could continue taking his medication, Dr. Wang examined Claimant once more on August 25, 2003. (R. at 289). The ALJ allowed the report from this examination to be admitted into evidence after the hearing. (R. at 53). However, the ALJ did not consider this evidence as it is illegible. (See R. at 289)

C.  School Records

1.  *Individualized Education Program Review, 2/19/02*

On February 19, 2002, the Elizabeth Board of Education completed an Individualized Education Program ("IEP") review. (R. at 153). The school staff concluded that Claimant has a Specific Learning Disability and that a significant discrepancy exists between his intellectual potential and his actual academic achievement. (R. at 153). They note that "[t]he learning disability is not the result of visual, hearing or motor disabilities, of emotional disturbance, of mental retardation or of environmental,

8

cultural or economic disadvantage. The academic deficits . . . are not correctable without special education and related services." (R. at 153).

Nevertheless, the report describes Claimant as cooperative, with an adequate attention span and lack of impulsivity. (R. at 154). It furthermore states that he was alert and oriented, with a positive mood and appropriate range of affect. (R. at 154). However, Claimant showed "a tendency to be quite slow responding . . . [and] his responses contained many hesitations, omissions, and substitutions of sound." (R. at 154). In addition, "he exhibited moderate difficulty with attention/concentration and required frequent encouragement and redirection to remain on task." (R. at 154). But "during his psychological evaluation [Claimant] demonstrated age appropriate communication skills." (R. at 154). The report concluded that Claimant's educational needs can be met within a mainstream class along with special educational supports or accommodations. (R. at 159).

2.   *Teacher Questionnaire, 4/25/02*

On April 25, 2002, Claimant's second grade teacher, Joan Rengel, completed a teacher questionnaire regarding Claimant. (R. at 218). The questionnaire asked her to rate Claimant's behavior in five domains on a scale of one to

9

five, where one indicates no problem and five indicates a serious problem. (R. at 221). Ms. Rengel evaluated Claimant as generally having slight problems (a rating of two) in the domains of Acquiring and Using Information as well as Attending and Completing Tasks. (R. at 219-20). She noted more serious problems in the domain of Interacting and Relating with Others where she indicated obvious problems (a rating of three) in about half of the subcategories and slight problems in most of the remaining subcategories. (R. at 221). In the domain of Caring for Himself, Ms. Rengel indicated that Claimant had no problem taking care of personal hygiene, physical needs such as dressing and eating, nor with taking medication. (R. at 223). But she noted slight problems in six other subcategories and an obvious problem being patient. (R. at 223). Ms. Rengel indicated no problems in the domain of Moving About and Manipulating Objects. (R. at 222). Ms. Rengel also commented that Claimant completes his work for certain subjects but "shuts down" and "becomes frustrated" in subjects that he does not fully understand. (R. at 219-21).

3.  *Teacher Questionnaire, 11/27/02*

On November 27, 2002, Claimant's third grade teacher,

Allison Mednick, completed a teacher questionnaire regarding Claimant. (R. at 240). In general, Ms. Mednick indicated more serious problems with Claimant. In the Domain of Acquiring and Using Information, she found Claimant to have problems in every subcategory. (R. at 241). She noted slight problems in two of the ten subcategories, obvious problems in five of the ten, and serious problems (a rating of four out of five) in three of the ten subcategories. (R. at 241).

In the domain of Attending and Completing Tasks, Ms. Mednick once again noted that Claimant had problems in every subcategory. (R. at 242). Out of thirteen subcategories in this domain, she indicated slight problems in three of them, obvious problems in two, serious problems in six and very serious problems (a rating of five) in two of the subcategories. (R. at 242).

In the domain of Interacting and Relating with Others, Claimant received more varied ratings. Ms. Mednick indicated no problem or slight problems in seven of the thirteen subcategories but indicated obvious, serious or very serious problems in six of the thirteen subcategories (including very serious problems in three of the subcategories). (R. at 243). Claimant's ratings in the domain of Caring for Himself were similarly varied. Ms.

Mednick indicated no problem or a slight problem in four of the ten subcategories and an obvious problem, serious problem or very serious problem in the six remaining subcategories. (R. at 243). Ms. Mednick further commented that Claimant is easily frustrated and "doesn't know how to react except for hitting or using bad language." (R. at 243). This questionnaire was completed just two days after Claimant started taking his medication. (R. at 246). Ms. Mednick noted that since starting the medication he seems "a little more focused but still has trouble doing tasks." She further noted that "[h]is impulsive behavior has not changed . . . ." (R. at 246).

4.   *Individualized Education Program Review, 4/10/03*

This review states that Claimant made academic progress and has greatly improved in some areas. (R. at 249). It notes, however, that the progress has been slow. (R. at 249). It further states that Claimant is cooperative and completes all of his classroom assignments so long as he has received his medication but notes that he is "disruptive and very restless" when he has not received his medication. (R. at 249). It also notes that he does not complete his homework assignments. (R. at 249).

Ms. Mednick notes in this review that Claimant enjoys group projects but relies on the other students to guide

12

him. (R. at 250). She says he has made some progress and works well when given short tasks to complete. (R. at 252). Claimant's physical education teacher noted that he "follows directions and participates appropriately." (R. at 253). Another teacher said Claimant "is much more on task this year" and "is less easily distracted and often exhibits good behavior and listening skills." (R. at 254). Several other teachers had similar comments indicating good behavior and overall progress. (R. at 255-57).

### III. **DISCUSSION**

A. <u>Determination of Disability</u>

For a person under the age of 18 (a child) to be considered disabled, he must "have a medically determinable physical or mental impairment or combination of impairments that cause[] marked and severe functional limitations . . . that ha[ve] lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. To determine whether a child is disabled, the child must satisfy the following conditions. First, the child must show that he is not working in a substantially gainful activity. 20 C.F.R. § 416.924(b). Second, the child "must have a medically determinable impairment(s) that is severe." 20 C.F.R. § 416.924(c). Third, the child must either show that (1) the severe impairment "meets,

or medically equals the requirements of a listing,[2]" or that (2) the severe impairment "functionally equals the listings."  20 C.F.R. § 416.924(d)(1)-(2).  A child's impairment is "medically equivalent to a listed impairment . . . if the medical findings are at least equal in severity and duration to the listed findings," comparing the evidence about the child's impairment to the "medical criteria shown with the listed impairment."  20 C.F.R. § 404.1526(a). If the child's impairment does not medically equal a listed impairment, the child is nevertheless disabled if the impairment is "functionally equivalent" to a listing.  The impairment is "functionally equivalent to a listing" if the child has either an "extreme" limitation[3] in one or a "marked"[4] limitation in two of the following six "domains:"

>        (i) Acquiring and using information;
>        (ii) Attending and completing tasks;
>        (iii) Interacting and relating with others;
>        (iv) Moving about and manipulating objects;
>        (v) Caring for yourself;
>        (vi) Health and physical well-being.

20 C.F.R. 416.926a(b)(1)(i)-(vi).

B.   <u>The ALJ's Opinion</u>

The ALJ determined that "[C]laimant ha[d] not engaged in

---

[2]Referring to the listing of impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[3]Defined as: "more than marked . . . the rating we give to the worst limitations."  20 C.F.R. § 416.926a(e)(3).

[4]Defined as: "more than moderate but less than extreme."  20 C.F.R. § 416.926a(e)(2).

14

substantial gainful activity since his alleged onset date" (R. at 15) and that Claimant's ADHD [was] a severe impairment. (R. at 17). However, the ALJ concluded that the impairment "does not meet or medically equal the criteria of any of the listed impairments . . . because the [C]laimant does not have inattention, impulsiveness or hyperactivity at a marked level." (R. at 17). The ALJ further concluded that Claimant's impairment does not functionally equal a listed impairment. (R. at 17). In making that determination the ALJ listed each of the six domains and stated that Claimant has a "marked" limitation in the first domain, Acquiring and Using Information, but that his limitations in each of the other five domains are "at a less than marked level" or that he has no limitation at all. (R. at 18). In accordance with the above findings, the ALJ concluded that Claimant is not disabled within the meaning of the Social Security Act. (R. at 19).

C. <u>Standard of Review</u>

In reviewing a final administrative determination, the duty of the district court is not to review the case *de novo*, but instead to discern whether the record contains substantial evidence to support the findings and determinations of the ALJ. <u>E.g.</u>, <u>Bradley v. Bowen</u>, 667 F. Supp. 161 (D.N.J. 1987). A district court must accept the ALJ's findings of fact as conclusive if they are supported by substantial evidence. 42

U.S.C. § 405(g); see also Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Substantial evidence has been defined as "[s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. at 704.  Whether evidence is substantial has been described by the Third Circuit as a qualitative, not quantitative, exercise, see Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983), requiring an elaboration of the ALJ's analysis "so that a reviewing court may know the basis for the decision . . . not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  Cotter, 642 F.2d at 705 (quoting Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974)).  When faced with conflicting evidence, an administrative decision must adequately explain in the record its reasons for rejecting or discrediting competent evidence.  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987).  "[A] single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion."  Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

16

D.  <u>Evaluation of the ALJ's Findings</u>

Plaintiff claims the ALJ's decision is not supported by substantial evidence and that, on the contrary, substantial evidence exists in the record to support a finding of disability. (Pl.s' Br. at 4).  But Plaintiff provides no specific examples to support that claim.  Nor does Plaintiff offer any analysis of the evidence nor even a reason why one piece of evidence might be more persuasive than another.  (See generally, Pl.'s Br.)  As such, it is difficult to evaluate Plaintiff's argument that there is substantial evidence to support her claim.

One might guess that Plaintiff is dissatisfied with the ALJ's failure to thoroughly evaluate several pieces of evidence. Admittedly, the ALJ could have bolstered his opinion with a more exhaustive discussion of the evidence.  For example, the ALJ did not mention the Child Study Team Evaluation from November 16, 2001.  (R. at 169).  That report offers an extensive analysis of Claimant's condition, including a statement (which favors Plaintiff) that Claimant has difficulty with attention, concentration and overactivity.  (R. at 169-70).  But such findings do not contradict the ALJ's decision.  After all, the ALJ recognized the fact that Claimant suffers from ADHD and concluded that his condition is a severe impairment.  (R. at 17). As such, he clearly recognized the fact that Claimant has difficulty with attention, concentration and overactivity.  But

17

these findings do not preclude the ALJ from determining that Claimant is not disabled within the meaning of the Social Security Act.  The ALJ had many other evaluations, including medical reports from Dr. Gutierrez and Dr. Wang, upon which to base his decision.  It is entirely reasonable for the ALJ to have determined that those reports supercede the Child Study Team's evaluation.  After all, each of those evaluations is more recent than the Child Study Team's evaluation, and Dr. Gutierrez's report, unlike the Child Study Team's report, was made specifically to determine whether Claimant is disabled.[5]

Similarly, the ALJ could have provided a more thorough description of Ms. Mednick's teacher questionnaire dated November 27, 2002.  (R. at 16).  Of all the evidence in the record, that report provides the most support for Plaintiff's claim as the evaluation arguably indicates a marked limitation in one of the six domains (though not the same domain in which the ALJ found Claimant to have a marked limitation).  (See R. at 241-247).  But even that evaluation, with only an arguably marked limitation in one domain, is not sufficient to support a finding of disability.  Furthermore, it is clear that the ALJ considered Ms. Mednick's

---

[5]Claimant was referred to Dr. Gutierrez by the Department of Labor, Division of Disability Determination Services to determine whether Claimant is Disabled under the meaning of the Social Security Act.  (R. at 197). The Child Study Team Evaluation, on the other hand, was performed to determine Claimant's educational needs.  (R. at 169).

report as he describes it in his opinion.  (R. at 16).  His decision, despite that report, is nonetheless reasonable, because there are several more recent reports showing that Claimant's condition is much less severe than that report indicates.  Dr. Wang's medical report from May 12, 2003 states that Claimant's condition has greatly improved since he started taking medication.  (R. at 281).  She describes him as cooperative, friendly and alert, with a good memory and average intelligence.  (R. at 280).  Likewise, the IEP review from April 10, 2003 states that Claimant has made significant progress (R. at 249).  In that review, several teachers comment that Claimant's behavior has greatly improved, he is more on task, and less easily distracted.  (R. at 254). Even Ms. Mednick notes that Claimant has made progress.  (R. at 250).  From this evidence, as well as a full review of the record, the ALJ's opinion seems entirely reasonable.

Plaintiff further disputes the ALJ's decision by arguing that he failed to "articulate the evidentiary basis that he utilized" in making his findings.  (Pl.'s Br. At 9).  It is true that the ALJ's opinion would be stronger if he had provided a more detailed description of his analysis, one that clearly connects his conclusions to the evidence used to support each conclusion.  But his opinion is nonetheless adequate.  The ALJ set forth the basis for his findings by providing a satisfactory

19

review of the evidence prior to stating each conclusion.  (R. at 15-19).  Such a review is sufficient.

**V.    CONCLUSION**

As described above, it is the District Court's duty to determine whether the ALJ's decision is supported by substantial evidence.  In this case, although he could have provided a more detailed analysis, the ALJ nonetheless set forth substantial evidence to support his conclusions, thereby providing the reviewing court with a basis for his decision.  Thus, for the reasons stated herein, the Commissioner's final determination is affirmed.  An appropriate order shall be entered.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated:      September 20, 2005

_____